IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NANCY CURIEL,　§ <br> *Plaintiff*, 　　　§ <br>　　　　　　　　§ <br> v. 　　　　　　§ <br>　　　　　　　　§ <br> KILOLO KIJAKAZI, 　§ <br> COMMISSIONER OF THE 　§ <br> SOCIAL SECURITY ADMINISTRATION, §<br> *Defendant*. 　　　§ | Civil Action No.: 4:20-cv-4327 |

## **MEMORANDUM AND ORDER**

Nancy Curiel filed the present action under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for disability insurance benefits. Curiel and the Commissioner filed cross-motions for summary judgment. Having considered the parties' filings, the record, and the law, Curiel's Motion (ECF 16) is DENIED, the Commissioner's Motion (ECF 19) is GRANTED**,** and this case is dismissed with prejudice.[1]

### **I. Background**

Curiel filed applications for disability insurance benefits and supplemental security income on December 28, 2017 alleging disability beginning December 31, 2016. Tr. 23. Following the denial of her applications and subsequent request for reconsideration, Curiel requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. Curiel was represented by counsel at a hearing on January 16, 2020, at which she and a vocational expert, Rosaline Y. Lloyd, testified. *Id.* An impartial medical expert, Dr. Shakil Mohammed, testified at the hearing by telephone. *Id.*

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including entry of final judgment. ECF 9.

Curiel's medical records were admitted into evidence at the hearing and include the following records: Texas Children's Hospital, 12/29/2006 to 06/12/207 (Tr. 428-535); LBJ General Hospital, 07/27/2016 to 12/09/2016 (Tr. 541-554); Settegast Community Health Center, 02/21/2012 to 09/25/2019 (Tr. 555-1206, 1266-87, 1302-28); Quentin Mease, 11/08/2016 to 03/01/2017 (Tr. 1215-1265); The NeuroPsychiatric Center of Harris County MHMRA, 07/27/2018 to 07/29/2018 (Tr. 1288-99); and Same Day Clinic, 01/10/2020 (Tr. 13331-35). Also before the ALJ were a June 27, 2007 consultative examination report of Robert Harper, PhD, (Tr. 536-540), and a March 2, 2018 consultative examination report of Sharon Swanson, PsyD, (Tr. 1207-14).

At the hearing, Curiel testified that she was 28 years old and had a high school education. Tr. 61. She was in special education classes in High School. Tr. 71. She stopped working for Amazon stocking shelves in October 2019 because her "back was hurting, and [her] feet were getting stiff, and [she] couldn't stand too much." Tr. 63. She attributed her back pain and inability to stand to scoliosis. Tr. 72. She briefly worked for a leasing agency in 2019 but was terminated for failing to follow a rule. Tr. 73-74.

A medical expert in psychiatry, Dr. Mohammed, testified based on his review of Plaintiff's medical records that Plaintiff did not meet the requirements of Listings 12.04, 12.06, and 12.11. Tr. 65-67. Dr. Mohammed opined that Plaintiff had a main diagnosis of borderline intellectual functioning, and had moderate limitation in the ability to understand, remember, and apply information, mild limitation in the area of concentration, persistence, and pace, and mild to moderate limitation in the ability to adapt and manage herself. Tr. 67. Dr. Mohammed did not opine about Listing 12.05 in his direct testimony and upon cross-examination it became clear that Dr. Mohammed was not familiar with the Listing regarding borderline intellectual functioning.

Tr. 67-70.  Therefore, the ALJ did not rely on the testimony of Dr. Mohammed regarding Plaintiff's borderline intellectual functioning, depression, or anxiety.  Tr. 30.

A vocational expert, Rosalind Lloyd, testified based on her review of the record that the only potentially substantial gainful activity in Plaintiff's work history is the job at Amazon and she did not have any past relevant work.  Tr. 79-80.  In response to a hypothetical question from the ALJ regarding a person with the residual functional capacity for sedentary work with other limitations, Lloyd testified that there were other jobs in the national economy that such a person could perform.  Tr. 80-82.  Lloyd further testified that a person who was off task 20% or more of the work-day on a consistent basis would be precluded from competitive employment.  Tr. 82. Upon cross-examination by Plaintiff's counsel, Lloyd testified that a hypothetical individual who needed to be prompted once every hour to complete a task or could not respond to changes in the work setting would be unable to perform regular work.  Tr. 82-83.

After the hearing, the ALJ issued a decision on February 26, 2020 concluding that Curiel was not disabled within the meaning of the Social Security Act.  The Appeals Council affirmed the ALJ's decision on September 3, 2020 and the ALJ's decision became the final decision of the Commissioner.  Tr. 1-6; *see* 20 C.F.R. §§ 404.981, 416.1481.

## II.    Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard and (2) whether the Commissioner's decision is supported by substantial evidence.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A decision is supported by substantial evidence if "credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018)

(citation omitted)). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* (citations omitted). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions de novo, or substitute its own judgment for that of the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). "The claimant bears the burden of satisfying the first four steps of the analysis; the Commissioner bears the burden of establishing the fifth by demonstrating that other work the claimant can perform is available in the national economy." *Wilson v. Kijakazi*, No. 21-60663, 2022 WL 2339471, at *2 (5th Cir. June 29, 2022). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

### III. Analysis

The ALJ performed the standard five-step sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.[2] Tr. 23-40. The Court addresses the ALJ's decision at each step below.

**1. Step One**

---

[2] The ALJ found that Curiel met the insured status requirements of the Social Security Act through June 30, 2018 and had not . Tr. 26.

4

At the first step, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. Plaintiff does not challenge the ALJ's finding that Plaintiff had not engaged in substantial gainful activity since her initially alleged onset date of December 21, 2016. Tr. 26; *See* ECF 16.

### 2. Step Two

At the second step, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Social Security regulations provide that "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). A plaintiff bears the burden to show not only the existence of an impairment, but its severity. *Randall v. Astrue*, 570 F.3d 651, 657 (5th Cir. 2009) (explaining that the statute and regulations "separate the question of the impairment's existence from the question of its severity.").

In this case, the ALJ cited and applied the severity standard articulated in SSR 85-28. Tr. 24-25. The ALJ found that Plaintiff had the severe impairments of morbid obesity, scoliosis, learning disorder, arthritis, mood disorder, and generalized anxiety disorder. Tr. 26. Plaintiff does not challenge the ALJ's severity findings. *See* ECF 16.

### 3. Step Three

The third step of the sequential analysis requires the ALJ to determine whether the claimant has a severe impairment that meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. p, app. 1. "For a claimant to show that his impairment matches a listing, it must meet *all* of the

5

specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). For a claimant to show than an impairment "medically equals" a listed impairment the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

The ALJ determined that none of Plaintiff's impairments, alone or in combination, met or equaled the severity of one of the listed impairments in Appendix 1. Tr. 26. The ALJ specifically discussed Listings regarding Plaintiff's physical impairments of scoliosis, osteoarthritis, and obesity. Tr. 26-27. The ALJ specifically discussed Listings 12.04, 12.05, and 12.06 regarding Plaintiff's mental impairments. Tr. 27-30. Before this Court, Plaintiff challenges as error the ALJ's conclusion that she does not meet the requirements of Listing 12.05B relating to an intellectual disorder. Listing 12.05B is as follows:

12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:

    \*    \*    \*

B. Satisfied by 1, 2, and 3 (see 12.00H):

    1. Significantly subaverage general intellectual functioning evidenced by a or b:
        a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
        b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

    2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
        a. Understand, remember, or apply information (see 12.00E1); or
        b. Interact with others (see 12.00E2); or
        c. Concentrate, persist, or maintain pace (see 12.00E3); or
        d. Adapt or manage oneself (see 12.00E4); and

      3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1P, App. 1.

      The ALJ found that Plaintiff did not satisfy the requirement of 12.05B(1)(a) because while the record contains evidence from Dr. Harper of a Full Scale IQ below 70 in 2007, Harper noted at the time that Plaintiff's "FSIQ of 62 fails [to] reflect the variability in her cognitive functioning." Tr. 28. Further, the ALJ stated that a more recent consultative examiner, Sharon Swanson, Psy.D., noted in 2018 that "the claimant had a lack of interest and not a lack of ability to concentrate during the psychological examination" and "the claimant has possible learned helplessness or malingering of her symptoms." *Id.* Swanson also reported that her observation of Plaintiff at the 2018 examination was not consistent with Plaintiff's representation that she needed help getting out of bed and getting dressed. *Id.* Swanson did not find any emotionally-related diagnoses based on her psychological exam and opined that her learning disability would give Plaintiff difficulty with comprehension of larger words and understanding some information and suggested Plaintiff would do best at a job that was "simple and concrete." *Id.* Based primarily on Swanson's report, the ALJ concluded that Plaintiff has moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing herself. *Id.* at 28-29.

      Plaintiff contends that the ALJ's finding that she does not meet Listing 12.05B is error because (1) the ALJ wrongly rejected the FSIQ results of Harper in finding she did not meet 12.05B(1); and (2) the ALJ's findings that Plaintiff does not have marked limitation in two or

7

extreme limitation in one of the adaptive functioning domains listed in 120.5B(2) are not supported by substantial evidence.

*Listing 12.05B(1).* As to Plaintiff's first contention, the ALJ was not required to accept the 2007 FSIQ score of 62 where the examiner himself questioned the accuracy of the score by stating that the test failed to "reflect the variability in her cognitive functioning," and noting that Plaintiff's perceptual reasoning index score was 84 and her processing speed index score was 78. Tr. 539. In addition, Harper's diagnosis was "borderline intellectual functioning," which at the time of his 2007 report was generally defined by an IQ ranging from 71-84, above the 12.05B(1) requirement. *See Ashmore v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-00112-KFG, 2019 WL 13210609, at *8 (E.D. Tex. Jan. 10, 2019) (citing *Dominque v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004)); Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR).

Moreover, The ALJ relied on other evidence in the record in finding her cognitive abilities were not as limited as an FSIQ of 62 would indicate. For example, Plaintiff graduated from high school and was only in special education classes for English and reading. Plaintiff did not exhibit problems with thought processes, problems with though content, or perceptual abnormalities at either the 2007 or 2018 consultative exams. Tr. 539, 1212. The Court concludes that ALJ's finding that Plaintiff did not meet 12.05B(1) is supported by substantial evidence.

Plaintiff also argues that the ALJ was required to further develop the record after rejecting the 2007 FSIQ score. This argument is without merit because it is her burden to establish disability and the decision to order a further consultative exam is discretionary and required only where "necessary." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (ALJ's decision to order a consultative examination is discretionary and only required if it is necessary to make a decision). Given that the ALJ's decision here is supported by both the 2007 and 2018 consultative reports, it

was not necessary for the ALJ to supplement the record before making a decision. Further, even if Plaintiff were able to meet the 12.05B(1) FSIQ requirement, she would still have to meet the requirements of 12.05(B)(2) to meet the Listing. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (the claimant must demonstrate her impairment meets all of the specified medical criteria). Thus, any failure to obtain an updated FSIQ score was harmless because, as discussed below, Plaintiff did not meet her burden as to the requirements of 12.05B(2). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (reversal for failure to develop the record is appropriate only if Plaintiff shows prejudice).

*Listing 12.05B(2).* In order to meet the requirements of Listing 12.05B, Plaintiff must show that she has marked limitation in two or extreme limitation in one of the four adaptive functioning domains listed in 12.05B(2)(a)-(d). Social Security regulations define marked limitation as having "seriously limited" ability to function "independently, appropriately, effectively, and on a sustained basis," and extreme limitation as "not able to function . . . independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F(2). Plaintiff argues that the ALJ should have found that she had extreme limitation in the domains of understanding, remembering, and applying information (12.05B(2)(a)) and concentrating, persisting, and maintaining pace (12.05B(2)(c)).

The ALJ considered the reports of two examiners, Harper and Swanson, in making findings on the criteria in 12.05B(2). Tr. 28-29. The reports indicate that Plaintiff's concentration, judgment, and memory were intact. Tr. 539, 1213. Swanson gave Plaintiff a "fair" prognosis and opined that Plaintiff would "do best at a job that was simple and concrete." Tr. 1214. Harper's 2007 opinion that Plaintiff would need "continued supervision" to develop "minimal competence for sedentary based activities" was given when Plaintiff was starting tenth grade and did not take

9

into account her ability to graduate high school and work history. Tr. 539. The reports of Harper and Swanson and Plaintiff's personal history constitute substantial evidence to support the ALJ's 12.05B(2) findings.

### 4. Step 4

At step four, the ALJ determines whether the claimant's Residual Functional Capacity permits performance of claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). In determining RFC, the ALJ considers the limiting effects of all a claimant's impairments, even those that are not severe. 20 C.F.R. § 404.1545(e); 20 C.F.R. § 416.945(e).

In this case, the ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except:

> no climbing ladders, ropes or scaffolds and no crawling. She can occasionally climb ramps and stairs, stoop, kneel, balance and crouch. She is precluded from repetitive bending or lifting. She should not work around bright lights, such as direct sunlight or strobe lights and no work around loud noise, such as construction sites or heavy traffic. She can understand, remember and apply/carry-out simple instructions and perform simple tasks. She can maintain concentration, persistence and pace for 2-hour periods, with customary breaks, throughout an 8-hour workday. She should not perform fast paced production work. She can occasionally interact with coworkers, supervisors and the general public. She needs a hands-on demonstration of the task(s) to be performed.

This RFC accounts for all physical and mental limitations the ALJ found to be supported by the record.

Plaintiff argues only that she should have been presumptively disabled at step 3 of the sequential analysis; Plaintiff does not challenge the ALJ's RFC determination or the finding of no past relevant work at step 4 of the sequential analysis. Because Plaintiff had no past relevant work, the ALJ continued to step 5 of the sequential analysis. Tr. 37-38.

### 5. Step Five

The ALJ determines at step five whether the claimant can perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Based on Plaintiff's age, education, work experience, and RFC, and based on the testimony of the vocational expert, the ALJ found that Plaintiff could perform the jobs of document preparer, surveillance system monitor, and call out operator. Tr. 38-39. Plaintiff argues only that she should have been presumptively disabled at step 3 of the sequential analysis; Plaintiff does not challenge the ALJ's decision at step 5 of the sequential analysis.

## IV. Conclusion and Order

For the reasons discussed above, the decision of the Commissioner is affirmed. It is ORDERED that Curiel's Motion (ECF 16) is DENIED, the Commissioner's Motion (ECF 19) is GRANTED**,** and this case is dismissed with prejudice. The Court will issue a separate Final Judgment.

Signed on January 10, 2023, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge